**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF THE EXTRADITION OF ADEM KOSTJEREVAC** | ) ) ) | **Case No. 4:19-MJ-6244 PLC** |

**MEMORANDUM AND ORDER**

The United States, acting on behalf of the Government of Bosnia and Herzegovina ("B&H"), filed a Complaint under 18 U.S.C. § 3184 seeking a warrant for the arrest of Adem Kostjerevac. According to the Complaint, authorities have a pending charge against Kostjerevac, a former member of the B&H military police, for "war crimes against civilians" based on "his alleged, repeated, forcible rape of a pregnant civilian prisoner in the Zvornik municipality in Bosnia during the Bosnian war in 1992." The Complaint further asserts that, pursuant to a treaty between the "United States and Servia for the Mutual Extradition of Fugitives from Justice, U.S. – Yugo, Oct. 25, 1901 (32 stat. 1890)" ("the Extradition Treaty"), the Government of B&H submitted a "formal request through diplomatic channels for the extradition" of Kostjerevac.

The United States ("the Government") filed a Memorandum of Law in Support of Extradition ("Memorandum") [ECF No. 5-1] seeking a hearing to determine whether the B&H extradition request was "sufficient under the provisions of the applicable treaty and to certify extradition of Kostjerevac to the Secretary of State." After the Court held a hearing,[1] Kostjerevac filed objections opposing the Court's certification of Kostjerevac's extraditability to the Secretary of State under Section 3184 [ECF No. 31], and the Government filed a reply to those objections [ECF No. 35]. Having considered the Government's extensive exhibit (a copy of

[1] During the hearing, the parties acknowledged the Government's Memorandum, which was filed under seal, served as the Government's request for the Court to take up the matter of the request for extradition of Kostjerevac. Prior to the hearing, Kostjerevac had not filed a response to the Government's Memorandum or any document conveying Kostjerevac's position(s) on his proposed extradition. No witnesses testified at the hearing.

which was filed with the Complaint and the original of which was introduced at the hearing), the parties' written submissions, evidence adduced at the hearing (consisting of the Government's exhibit and Kostjerevac's three exhibits), and counsel's oral arguments, the Court concludes that there is sufficient competent evidence to grant the certificate of Kostjerevac's extraditability to the Secretary of State pursuant to 18 U.S.C. § 3184.

## Facts

The United States originally entered into the Extradition Treaty with Serbia for the "mutual extradition of fugitives from justice" by signing it in 1901 and ratifying it in 1902. The Extradition Treaty continued in force with the former Yugoslavia and applies to B&H as a successor state of the former Yugoslavia. Tom Heinemann Decl. para. 2.

In Article I of the Extradition Treaty the governments of the United States and Serbia (and now, B&H):

> mutually agree[d] to deliver up persons who, having been charged with . . . any of the crimes and offenses specified in the following article, committed within the jurisdiction of one of the . . . contracting [governments], shall . . . be found within the territories of the other: Provided, that this shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her oppression and commitment for trial if the crime or offense had been committed there.

The "following article," Article II of the Extradition Treaty, provides that "extradition shall be granted for the following crimes and offenses . . . 9. Rape . . . ."

In 2015, the B&H prosecutor issued an indictment charging Kostjerevac with violating rules of international law during the war in B&H because he "forced a civilian woman to [sic] sexual intercourse . . . ." The indictment describes the factual circumstances of the incident and asserts that Kostjerevac "committed the criminal offense of War Crimes against Civilians under Article 142(1) of the Criminal Code of SFRY [the Socialist Federal Republic of Yugoslavia, and

now B&H]."[2] The indictment also contains a description of the circumstances of the alleged offense and the prosecutor's investigation, including statements of more than ten interviews with the injured party and other corroborating witnesses, as well as multiple documents supportive of the charge, and concludes as follows:

> . . . [T]hat the suspect indeed committed the acts he is charged with under the indictment follows from the statements of the witnesses who were examined in the investigation, primarily the injured party A.O. herself, as well as the other proposed witnesses who confirmed that the injured party was captured and detained in the period concerned in the place of Bajrici, that the suspect was a member of the Military Police who, among other things, also guarded the injured party during the captivity. The injured party also testified in detail about her captivity and rape and the suspect Adem Kostjerevac as the perpetrator of the rape before the International Criminal Tribunal for the Former Yugoslavia on 8 February 2005 in the case number IT-03-68-T, the transcript of which testimony is attached to th[e] indictment. In addition to this, the statements of all witnesses are corroborated by the attached documentary evidence – medical documentation, [as well as] the other compiled documents and records. The injured party A.O. had known the suspect from before, she knows his sister, and she had also met him on the eve of the war in Novo Selo together with her husband S.O., who had known the suspect from before since they had attended the same elementary school in Novo Selo.

On April 14, 2015, the B&H Court "confirmed" the indictment. The B&H Court set two hearings in 2016 and 2017 neither of which Kostjerevac attended. In April 2017, the prosecutor filed a motion for an order to take Kostjerevac into custody. The B&H Court granted the order, finding among other things:

> [t]he existence of grounded suspicion that the Accused . . . committed the criminal offense that he is charged with, as a general statutory presumption and the sine qua non requirement for the existence of custody, follows from the following evidence attached to the Indictment: the statement of the injured party A.O., who stated that she had known the Accused before the war and that he raped her several times in violation of the rules of international law. The injured party testified in detail about the rape and the perpetrator before the International Criminal Tribunal for the Former Yugoslavia on 8 February 2005 in the case No. IT-03-68-T and the transcript of that testimony was proposed in the Indictment as evidence. Witness

[2] Article 142(1) of the Criminal Code of SFRY provides: "Whoever in violation of rules of international law, effective at the time of war, armed conflict or occupation, . . . orders that [the] civilian population be subject to . . . forcible . . . rape . . . or who commits one of the [listed] acts[, such as forcible rape against a civilian], shall be punished" in accordance with applicable law.

> Asim Ramic also testified about the rape of the injured party during her detention, while witnesses Ajka Junuzovic and Omer Muratovic confirmed in their statements that the injured party was detained. Witnesses Refik Mustafic, Sabit Sabic and Ramo Kostjerevac confirmed that the injured party was imprisoned and also confirmed Adem Kostjerevac's role in the period concerned.

In its order, the B&H Court also discussed Kostjerevac's failure to attend previously-scheduled court proceedings, as well as Kostjerevac's assertion that he did not appear due to his "grave health condition." The B&H Court determined Kostjerevac had been served with the expert's first report referring to the examinations and reports she needed to "be able to rule with greater certainty on [Kostjerevac's] capacity to stand trial" and, "if there existed justified medical reasons, [Kostjerevac] had the opportunity to obtain the referenced medical reports by the set deadline." The B&H Court noted a second report, issued after the defense submitted medical documentation, where "the expert stated unambiguously that [Kostjerevac] was capable of standing trial." Finally, the B&H Court concluded "that [Kostjerevac] has been deliberately avoiding participation in the criminal proceedings, that is, using the medical documentation to justify his absence, although the documentation d[id] not constitute a valid and well-founded reason for the absence."

In addition to the statements of witnesses and other documentation from B&H, the Government's exhibit includes a declaration of Tom Heinemann, Assistant Legal Adviser for the Office of Law Enforcement and Intelligence in the Office of the Legal Adviser for the Department of State, United States of America.[3] Mr. Heinemann's declaration provides that the applicable treaty provisions between the United States and B&H are found in the Extradition Treaty and are in full force and effect. The declaration further states that B&H's extradition request is in accord

[3] Mr. Heineman also declares the Office of Law Enforcement and Intelligence in the Office of the Legal Adviser for the Department of State is responsible for extradition requests, and he "is charged with" this extradition case.

with the provisions of the Extradition Treaty, and "the offense for which extradition is sought is covered by Article II of the [Extradition] Treaty."

Finally, Mr. Heineman declares that the documents submitted by the Government of B&H in support of its extradition request were certified by the "principal consular officer of the United States [resident] in the Republic of Bosnia and Herzegovina" in accordance with 18 U.S.C. § 3190.[4]  In particular, the principal consular officer, Scott A. Norris, certified that the papers submitted in support of the extradition request "are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals" of B&H.

Before the hearing, Kostjerevac did not file material disclosing his position(s) on the extradition request.  During the hearing, Kostjerevac's counsel announced she had no objection to:  the undersigned's authority over this extradition proceeding; the Court's jurisdiction over Kostjerevac; the existence in full force and effect of the Extradition Treaty between the United States and B&H that encompasses the request of B&H to extradite Kostjerevac; and the characterization of the alleged underlying rape as the subject of the Extradition Treaty between the United States and B&H and as a crime in both countries.  Hr'g Tr. at 6-10 [ECF No. 30]. Kostjerevac's counsel challenged Kostjerevac's extradition on the ground there was no showing of probable cause that Kostjerevac committed the alleged offense, in particular with respect to identification of Kostjerevac as the alleged perpetrator, specifically, whether "he had a mustache and what his nickname was."  Id. at 10, 19.  In his post-hearing objections to certification,

---

[4]  Section 3190 provides that

> [d]epositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

Kostjerevac further argues that he is not subject to extradition because a five-year statute of limitations applies and bars his prosecution for any alleged rape occurring in 1992.

**Discussion**

Extradition proceedings are unique. In re Extradition of Jarosz, 800 F. Supp. 2d 935, 938 (N. D. Ill. 2011). "Neither civil nor criminal, this *sui generis*, statutorily defined proceeding has remained essentially unchanged since 1848." Id. The extradition of a person from the United States to a foreign country, such as B&H, is governed by 18 U.S.C. § 3184. Section 3184 provides in relevant part:

> Whenever there is a treaty . . . for extradition between the United States and any foreign government, . . . any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty . . ., . . . issue [a] warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, [the presiding judge] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty . . ., . . . [the presiding judge] shall certify the same, together with a copy of all the testimony taken before [the presiding judge], to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty . . .; and [the presiding judge] shall issue [a] warrant for the commitment of the person so charged to proper jail, there to remain until such surrender shall be made.

As evident from the statute, a United States court has a limited role in a proceeding based on a foreign government's extradition request. United States v. Kin Hong, 110 F.3d 103, 110 (1st Cir. 1997); Martin v. Warden, Atlanta Pen, 993 F.2d 824, 828, 829 (11th Cir. 1993). "[T]he Secretary of State . . . possesses the final authority for determining whether a fugitive should be surrendered to a requesting country. 18 U.S.C. § 3186." In re Extradition of Mujagic, 990 F.Supp.2d 207, 214 (N.D. N.Y. 2013). More specifically, if a United States court finds, under Section 3184, that the "evidence [is] sufficient to sustain the charge under the provisions of the proper treaty," the

presiding judge certifies that finding to the Secretary of State, who then decides whether to deliver the person to an authorized agent of the foreign government "to be tried for the offense . . . charged." 18 U.S.C. §§ 3184, 3186, respectively; see also United States v. Wiebe, 733 F.2d 549, 553 (8th Cir. 1984) (if the presiding judge finds evidence sufficient to sustain the charge under the extradition treaty, the judge "must certify the fugitive as extraditable to the Secretary of State").

"[T]he judicial officer's inquiry is limited to a narrow set of issues concerning the existence of a treaty, the offense charged, and the quantum of evidence offered." Kin-Hong, 110 F.3d at 110. Specifically, a court's issuance of an extradition certificate under Section 3184 may be challenged only to determine:

> whether (1) the extradition judge had jurisdiction to conduct extradition proceedings; (2) the extradition court had jurisdiction over the fugitive; (3) the treaty of extradition was in full force and effect;[5] (4) the crime fell within terms of the treaty; and (5) there was competent legal evidence to support a finding of extraditability.

In re Extradition of Assarsson, 687 F.2d 1157, 1159 (8th Cir. 1982) (footnote added) (internal quotation marks omitted) (quoting Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir. 1978)). As noted earlier, Kostjerevac argues only that: (1) the alleged rape does not fall within the terms of the treaty because the five-year statute of limitations bars prosecution for that crime and (2) there is insufficient competent evidence to support a finding of extraditability.[6]

---

[5] The Extradition Treaty applies to B&H under the "state succession" doctrine, as B&H is a successor state to the former Yugoslavia, which was a successor state to the Kingdom of Serbia. Sacirbey v. Guccione, 589 F.3d 52, 56 n.8 (2nd Cir. 2009). Multiple courts examining the Extradition Treaty have found that it is in full force and effect. See, e.g., Artukovic v. Rison, 784 F.2d 1354, 1356 (9th Cir. 1986) ("We have long held that the 1902 treaty is valid and effective now even though Yugoslavia did not exist as a political unit at the time the treaty was signed"); In re Extradition of Handanovic, 829 F. Supp. 2d. 979, 983-85 (D. Or. 2011) ("the 1902 Treaty remains a valid extradition treaty between the United States and B & H as a successor state to Yugoslavia"); In re Extradition of Bilanovic, No. 1:08-MJ-74, 2008 WL 5111846, at *7 (W.D. Mich. Dec. 3, 2008) (finding the Extradition Treaty is "a valid treaty of extradition"); United States v. Avdic, No. CR 07-M06, 2007 WL 1875778, at *6 (D. S.D, June 28, 2007) (finding the Extradition Treaty exists in full force and effect). This Court concurs in those assessments of the Extradition Treaty and finds it is in full force and effect.

[6] In addition to concluding the Extradition Treaty is in full force and effect between the United States and B&H, see, e.g., footnote 3, supra, the Court further concludes: (1) it has jurisdiction over this proceeding because

1. Statute of Limitations

Pointing to Article VII of the Extradition Treaty, Kostjerevac contends that Treaty "explicitly bars extradition for offenses barred by the statute of limitations in the country to which the extradition request is addressed, here, the United States." To determine the applicable statute of limitations, Kostjerevac asserts, the Court must look to the "most closely analogous offense in the United States for the underlying offense." Kostjerevac notes, without citation to a federal statute, that the "most closely analogous offense in the United States for the underlying conduct alleged . . . is rape, a non-capital offense." Kostjerevac further argues that the applicable statute of limitations for non-capital offenses is five years, as provided for in 18 U.S.C. § 3282(a). Section 3282(a), provides, in relevant part, as follows: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years . . . after such offense shall have been committed." Claiming that the events underlying the indictment occurred in 1992 and that the alleged rape is not a capital offense, Kostjerevac argues that the five-year statute of limitations, as specified in 18 U.S.C. § 3282(a), has expired, barring extradition.

The Government agrees with Kostjerevac that the "most closely analogous offense" is rape, and cites to the offense as codified in 18 U.S.C. § 2241(a), a statutory provision in Chapter 109A, the chapter that enumerates federal crimes under the heading "Sexual Abuse." However, the Government contends that the applicable statute of limitations is not 18 U.S.C. § 3282(a), which governs "[o]ffenses not capital," but rather 18 U.S.C. § 3299, which governs "[c]hild abduction

---

the proceeding was assigned to the undersigned at filing, see, e.g., 28 U.S.C. § 636; Local Rule 11.01; 18 U.S.C. § 3184; (2) it has jurisdiction over Kostjerevac, who resided in and was found in the Eastern District of Missouri, 18 U.S.C. § 3184; and (2) the alleged rape underlying the charged war crime is one of the offenses that is explicitly named in Article II of the Treaty as one of the offenses for which extradition may be granted, see In re Extradition of Handanovic, 829 F. Supp. 2d at 988-91.

and sex offenses," and in particular applies to "any felony under chapter 109A." Section 3299 provides in relevant part: "Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation . . . for any felony under chapter 109A."

Article VII of the Extradition Treaty states that: "Extradition shall not be granted, in pursuance of the provisions of this Treaty, if legal proceedings or the enforcement of the penalty for the act committed by the person claimed has become barred by limitation, according to the laws of the country to which the requisition is addressed." This Court applies "the statute of limitations applicable to the substantive offense under United States law that is most closely analogous to the charged offense[]." Nezirovic v. Holt, 779 F.3d 233, 238 (4th Cir. 2015) (addressing an extradition request under the Extradition Treaty). Article II of the Extradition Treaty lists the crimes and offenses for which "[e]xtradition shall be granted." Article II does not mention "war crimes" but does identify "rape" as one of the crimes for which extradition may be granted. The parties do not dispute that the alleged underlying rape offense is the offense to which the Court must apply a statute of limitations.

With respect to the underlying rape, the indictment describes the circumstances of the alleged offense as follows:

> On yet unidentified dates during the period between 18 September 1992 and 4 October 1992, in the evening hours, in the territory of the Zvornik municipality, in the basement of the mill owned by Smajil Junuzovic, in the village of Barjrici, which served as a detention room in which [the injured party, a civilian woman,] was held prisoner, during the period over which he performed his duties as a guard, on multiple occasions, at least twice, [Adem Kostjerevac] forced [the injured party] to sexual intercourse, although she was pregnant at the time, by the use of force, by entering the room armed with a gun and a rifle, and addressed [the injured party] with the words: "Now you will see how a Turk fucks," ordered her to take off all her clothes, which the [injured party] did, fearing for her life, and told her to lie down, after which Adem Kostjerevac raped her, while biting her and telling her: "There won't be any of you left, not even in Belgrade," due to which rape [the injured party] lost her pregnancy.

Although the offense of "rape" is not specifically mentioned in 18 U.S.C. § 2241(a), the federal offense statute to which the Government refers as encompassing the underlying rape offense, the allegations in the indictment against Kostjerevac describe a forcible rape that would support an allegation of "[a]ggravated sexual abuse" as described in 18 U.S.C. § 2241(a). See United States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001) (addressing allegations of sexual intercourse under Section 2241(a)).

At the time of the alleged incidents in 1992, Section 2241(a) provided that a person

> in the . . . jurisdiction of the United States or in a Federal prison,[7] [who] knowingly causes another person to engage in a sexual act[8] --
>
> (1) by using force against that other person; or
>
> (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping;
>
> or attempts to do so, shall be [subject to the statutorily specified punishment upon conviction].

(footnotes added). See Section 87(b) of Pub. L. 99-646, Nov. 10, 1986, 100 Stat 3620.[9] As quoted, Section 2241(a) remained in effect through 1992, when Kotjerevac allegedly raped the victim, and through 2000 when the Eighth Circuit decided Gabe.

---

[7] A "prison" is statutorily defined to mean "a correctional, detention, or penal facility." 18 U.S.C. § 2246(1).

[8] As found by the Eighth Circuit, when, as here, the victim is over fifteen years of age, "[a] 'sexual act' [for Chapter 109A offenses] includes various forms of contact between the offender and the victim's body; in this case, the sexual act required some form of intended sexual penetration of the victim. See 18 U.S.C. § 2246(2)(A)-(C)." United States v. Brown, 702 F.3d 1060, 1064 (8th Cir. 2013) (footnote omitted). Specifically, with respect to the allegations against Kostjerevac, the relevant "sexual act" for Section 2241(a)(1) is statutorily defined to include "contact between the penis and the vulva . . . and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight." 18 U.S.C. § 2246(2)(A).

[9] In 1994 Section 2241(a) was amended only to change the spelling of "kidnaping" to "kidnapping." Pub. L. 103-322, Title XXXIII, Section 330021(1), Sept. 13, 1994, 108 Stat. 2150. In 2006 additional language was added to Section 2241(a) after "Federal prison" and before "knowingly causes." Pub. L. 109-162, Title XI, § 1177(a)(1), (2), Jan. 5, 2006, 119 Stat. 3125.

Other amendments to Section 2241 between 1994 and 2006 only amended Section 2241(c), not Section

In Gabe, the Eighth Circuit found that "[f]orce is an element of the offense of aggravated sexual abuse" under Section 2241(a)(1) and "the requisite force is established if the defendant overcomes, restrains, or injures the victim or if the defendant uses a threat of harm sufficient to coerce or compel submission." Gabe, 237 F.3d at 961 (internal quotation marks and citation omitted). The Eighth Circuit concluded that evidence regarding two incidents involving the defendant's sexual intercourse with the victim was sufficient "for a reasonable jury to conclude, beyond a reasonable doubt, that force was used to accomplish the sexual abuse" under 18 U.S.C. § 2241(a). Id. The evidence of force found sufficient for those two incidents consisted of: (1) the fifteen-year-old victim's testimony that the defendant had previously "struck her and her mother and that she obeyed him during these incidents because she was afraid of him"; (2) as to the second incident, the same victim testified that the defendant "forced her to have sexual intercourse without her consent";[10] and (3) a doctor "testified that these sexual acts would have been painful to" the victim. Id.

In view of the circumstances alleged in the indictment surrounding the alleged rape(s) of the captive civilian woman in her place of captivity in 1992 by Kostjerevac, who was at the time a member of the Military Police, the Court agrees with the Government that those circumstances support a finding that the offense, if charged by the Government in similar circumstances here, would support a charge of aggravated sexual abuse, based on rape, of a person detained in a federal

---

2241(a). See amendments to only Section 2241(c) by Pub. L. 104-208, Div. A, Title I, § 101(a), Sept. 30, 1996, 110 Stat 3009-31 and by Pub. L. 105-314, Title III, § 301(a), Oct. 30, 1998, 112 Stat. 2974.

[10] Recently, the Eighth Circuit construed the legislative history of Section 2241(a)(1) as establishing that, since 1986, "the government is not required to show that the victim did not consent to the sexual act or that the victim resisted to prove a violation of § 2241." United States v. Cobenais, 868 F.3d 731, 739-40 (8th Cir. 2017) (internal quotation marks and citation omitted). The Eighth Circuit concluded, however, that "Congress's elimination of the traditional rape law doctrine of consent does not mean that consent is irrelevant"; rather, "actual consent is relevant [in a trial under Section 2241] to the extent it negates the required causation." Id. at 740 (internal quotation marks and citation omitted) (bracketed language in original).

detention facility under 18 U.S.C. § 2241(a). The question then is whether the limitations provision in 18 U.S.C. § 3299,[11] rather than the limitations provision in 18 U.S.C. § 3282(a) applies to aggravated sexual abuse under Section 2241(a).

Because Section 2241(a), which is in chapter 109A, does not "specifically classif[y] by letter grade" the "aggravated sexual abuse" offense, the Court looks to 18 U.S.C. § 3559 to ascertain whether that offense may be considered a felony. Under Section 3559, an aggravated sexual abuse offense under Section 2241(a) may be classified as either: (1) a Class A felony under Section 3559(a)(1), because the maximum term of imprisonment under Section 2441(a) is life imprisonment, or (2) a "serious violent felony" as defined in Section 3559(c)(2)(F)(i), depending on the prior criminal history of the defendant. Therefore, an aggravated sexual abuse offense under Section 2241(a), including forcible rape such as the rape charged against Kostjerevac, constitutes a felony under chapter 109A.[12]

Although the Eighth Circuit has not specifically addressed the applicable statute of limitations for crimes committed in violation of 18 U.S.C. § 2241(a), the court has held that a violation of 18 U.S.C. § 2241(c), identified as a "Chapter 109A felony," is governed by the statute of limitations set forth in 18 U.S.C. § 3299. United States v. Webster, 797 F.3d 531, 533, 534 (8th Cir. 2015). Just as the Eighth Circuit concluded that "[t]here is no statute of limitations for § 2241(c)," id., this Court concludes there is no statute of limitations for § 2241(a). See also In

[11] The fact that 18 U.S.C. § 3299 was enacted in 2006, or several years after the alleged offense to which it may apply, does not require the Court to avoid applying it in this extradition proceeding. See In re Extradition of Nezirovic, No. 7:12MC39, 2013 WL 5202420, at *8-13, *9 (W.D. Va. Sept. 16, 2013) (explaining why, in a proceeding under the B&H Extradition Treaty, "the court determine[d] the applicable limitation period based upon the laws in effect at the time of the extradition request and not when the acts allegedly occurred" in 1992).

[12] This analysis also establishes that the underlying rape or "aggravated sexual abuse" under United States federal law "may be punished in the United States as [a] felony" to the extent such a finding is necessary under Article II of the Extradition Treaty. At the end of the listing of offenses subject to extradition identified in that Article, the Extradition Treaty states: "Extradition is also to take place for participation in any of the crimes and offenses mentioned in this Treaty, provided such participation may be punished in the United States as a felony . . . ."

re Extradition of Langadec, 394 F.Supp.3d 542, 547 (E.D. N.C. 2019) (concluding the alleged offenses, which included offenses within chapter 109A, if committed in the United States, "would not be barred by the statute of limitations" due to the limitation provision in 18 U.S.C. § 3299). Accordingly, the applicable statute of limitations, 18 U.S.C. § 3299, does not bar Kostjerevac's extradition.

2. Probable cause

In his post-hearing objection to certification, Kostjerevac contends that the "evidence at the extradition hearing" does not meet the applicable probable cause standard, to "sustain the charge" under the Extradition Treaty as required by Section 3184. More specifically, Kostjerevac asserts that the evidence presented at the hearing was "contradictory and uncorroborated." The Government argues the Court should not consider Kostjerevac's challenges to credibility and lack of corroboration and should find, based on the Government's exhibit, that "[t]here is sufficient evidence to establish probable cause that [Kostjerevac] forcibly raped AO."

It is well established that"[t]he extradition hearing is not a trial on the merits to determine guilt or innocence, but serves as a means of ensuring that probable cause exists to believe the person whose surrender is sought has committed the crime for which his extradition is requested." Wiebe, 733 F.2d at 553 (internal citations omitted). The applicable probable cause standard in extradition proceedings has been defined as "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." Id. (internal quotation marks and citation omitted). "Competent evidence to establish reasonable grounds [for extradition] is not necessarily evidence competent to convict." Fernandez v. Phillips, 268 U.S. 311, 312 (1925).

In support of his theory that extradition is not appropriate because "the evidence was contradictory and uncorroborated," Kostjerevac identifies the following deficiencies in the record:

(1) Kostjerevac's denial of the incident in his November 2014 statement; (2) the absence of "scientific corroborating evidence," (2) inconsistencies regarding the particulars of A.O.'s disclosure of the rape; (3) inconsistencies regarding A.O.'s "version" of the timing of the rape; and (4) inconsistency in the description of the perpetrator of the alleged rape, including whether the perpetrator had a mustache and his nickname.[13] Kostjerevac also appears to attack A.O.'s credibility by asserting that her husband claimed she told him "everything," but A.O. asserted she "kept many things from [her] husband." Due to "the contradictions in the testimony, the opposed positions of [Kostjerevac] and A.O., and . . . the passage of time," Kostjerevac argues "the evidence presented" is not sufficient to support extradition. In response, the Government urges the Court to disregard Kostjerevac's attacks on the evidence because they are not properly considered during an extradition proceeding.

"An accused in an extradition [proceeding] has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof. Shapiro v. Ferrandina, 478 F.2d 894, 905 (2nd Cir. [(1973)]." Eain v. Wilkes, 641 F.2d 504, 511 (7th Cir. 1981). "[I]ssues of credibility are to be determined at trial," rather than during an extradition proceeding. Bovio v. United States, 989 F.2d 255, 259 (7th Cir. 1993) (finding in a habeas proceeding challenging a finding of probable cause made in an extradition proceeding that the person subject to the extradition request had "no right to attack the credibility of either" a police investigator or an accomplice because credibility is decided at trial).

[13] To the extent the Court should consider A.O.'s statements that the perpetrator had a moustache, none of the pictures of Kostjerevac in the record, including those in his exhibits, depict a man with facial hair. The Court notes, however, that none of the pictures are dated during the time of the alleged offense and the presence or absence of facial hair is not determinative of the perpetrator's identity under the circumstances of this case.

Kostjerevac's evidence and arguments focus on challenging the credibility of the evidence presented in support of the extradition of Kostjerevac to B&H, in particular, the credibility of A.O's statements regarding what Kostjerevac did to her after she was captured and detained in 1992 and the identification of Kostjerevac as the perpetrator of the alleged offense. Because resolution of credibility issues is appropriately addressed during trial rather than during an extradition proceeding, the Court declines to resolve Kostjerevac's contentions related to credibility in this extradition proceeding. See Barapind v. Enomoto, 400 F.3d 744, 752 (9th Cir. 2005) (en banc) (per curiam) (finding "justified" an extradition court's conclusion that an affidavit submitted by a person subject to an extradition request to challenge his identification as the perpetrator did not "destroy probable cause" because "a trial would be required to determine who was telling the truth").

The Government contends there is sufficient evidence before the Court to establish the probable cause necessary to certify the extraditability of Kostjerevac. In particular, the Government points to (1) A.O.'s sworn statements made after her imprisonment, in which she identified Kostjerevac as the perpetrator and described with particularity the first instance of rape by Kostjerevac, and (2) others' sworn statements supporting various aspects of A.O.'s narrative. The Government also notes that A.O.s statements describe how she knew Kostjerevac before the alleged rape(s) occurred. As support for its position that the statements of a victim in a sexual assault case are sufficient to establish probable cause for purposes of extradition, the Government cites: In re Extradition of Lagadec, 394 F.Supp.3d. at 548; In re Extradition of Trinidad, 754 F.Supp.2d 1075, 1082-83 (N. D. Ca. 2010); and In re Extradition of Ritzo, No. 2:09-mj-189, 2010 WL 1542543, at *6 (D. N.D. Apr. 15, 2010). Other than contesting the credibility of A.O.'s statements, Kostjerevac does not explicitly challenge use of a victim's statements to support

probable cause in an extradition proceeding or respond to the case law cited by the Government regarding use of a victim's statements under the circumstances here.

In addressing probable cause for extradition, a court "must determine whether probable cause exists for each charge [forming] the basis for the extradition request," and "[t]he extradition record must demonstrate 'coherent legal connections between the factual allegations and extraditable offense[]." In re Extradition of Handanovic, 829 F. Supp. 2d. 979, 985 (D. Or. 2011 (citing Caplan v. Vokes, 649 F.2d 1336, 1343-44 (9th Cir. 1981)). The record here, in particular information in A.O.'s statements, as corroborated by others' statements and documentation available in the Government's exhibit, which consists of material submitted by B&H in support of its extradition request, establishes probable cause for the alleged rape(s) underlying the sole charged war crime offense.

The record includes four sworn statements made by A.O. between 2007 and 2014, as well as a transcription of her 2005 statement to the International Criminal Tribunal for the Former Yugoslavia. A.O.'s February 8, 2005, statement is reflected in a transcript for case IT-03-68-T. For that statement, A.O. answered questions posed by a person identified as Ms. Sellers during private sessions with judges in a "Trial Chamber." Tr. at 4793-4808. A.O. stated that: (1) she was raped by a person named Adem, who was "too rough," Tr. at 4793-94; (2) she knew him from her village, Novo Selo, id. at 4794; (3) he raped her while he was in a "[u]niform, and armed," id. at 4794; (4) he raped her "several" or "many" times, id. at 4795; and (5) his nickname was "Bat, Palica, P-a-l-i-c-a," id.

In her January 18, 2007 sworn statement at the District Prosecutor's Office of Bijeljina, A.O. described her arrest on September 17, 1992; her detention at a place in Bajrici, that was "a basement area" from about September 18, 1992 until about October 1, 1992 (after which she was

taken to the house of Sahbaz and Sadika Sinanovic, until being taken to Cerska around October 5, 1992). She described Adem Kostjerevac's rape of her "five or six evenings" while she was in the Bajrici "prison." She stated that Kostjerevac, while in a "Military Police uniform" "raped [her] by knocking [her] down onto a concrete slab covered with straw" and after the rapes she "lost [her] pregnancy." She said Kostjerevac's nickname was "Dupla palica"; he was born in about 1960 ("the same as [her] husband"); and he told her "after the raping that he would slit [her] throat if [she] told anyone, and so [she] never told anyone that he had raped [her]."

A.O. also gave a sworn statement on April 30, 2007, to the B&H Prosecutor's Office in Sarajevo describing in more detail her capture on September 17, 1992, when she was three months pregnant, and her detention until early October 1992 in a "dungeon" she described as a room not tall enough for her to be "able to stand straight," with no windows and a small wood door "with a small opening covered with wire netting." She said: "After several days spent in that basement, Adem Kostjerevac, whom [she] knew from before the war and who knew [her] husband and brother-in-law, came in. Back then he looked young, with dark hair and a mustache." She said his nickname was "the double bat" and he told her

> he was a member of the military police. So on one occasion he entered the basement and raped [her], and [she] had to let him for [she] was helpless, incarcerated, alone, without anyone's help, and he had an automatic rifle by his side. Please note that at the time [Kostjerevac] was not a guard at the dungeon, but had a blue military uniform. He would then come by the dungeon repeatedly, and raped [her] every time, sadistically so.
>
> * * *
>
> Due to the repeated rape, [she] lost [her] pregnancy in the dungeon, having bled out, and on one occasion Ajka Junuzovic gave [her] some rags to clean up, but [she] did not tell her [she] had been raped, for [she] did not dare to.

On September 24, 2009, at the Public Security Center Bijeljina for the Ministry of the Interior, A.O. provided another sworn statement describing her capture on September 17, 1992,

while she was three months pregnant, and her detention in “some jail” she described as a ”windowless” “basement room,” “made of concrete” with a door “made of wood, . . . [with] a small opening in the door that was covered in wire mesh, and . . . straw spread on the concrete floor.” A.O. explained that “Adem Kostijerevac entered at nighttime, [she] kn[e]w him personally as he [was her] neighbor from Novo Selo, and on that occasion he raped [her] and as he abused [her she] miscarried. [He] came to [her] in prison for several nights and raped [her].” She further stated that in early October 1992 Sahbaz Sinanovic took her to his home for a few days before taking her to Cerska.

On June 9, 2014, A.O. gave a sworn statement to the B&H Prosecutor’s Office in Sarajevo, at the Public Security Station in Zvornik, describing her capture on September 17, 1992, and detention in a “prison” until early October 1992. A.O. explained she met Kostjerevac, with her husband, “[j]ust before” the outbreak of the war “on a hillock, which was about 100 meters away from our family house in Novo Selo. [Kostjerevac] was tall, with black hair and moustache.” A.O. stated that her husband “had known [Kostjerevac] from before, since they lived in close vicinity. [Her] husband told [her] his name.” A.O. described how,

> [a]fter being brought to that prison in Bajrici, Adem Kosterjevac came to the prison on the first evening. He wore a black uniform. [She] remember[s] him saying at the time: “Strip off your clothes, you will now see how a Turk f . . . . .” [She] obeyed him, because [she] had to strip off [her] clothes out of fear. Then he raped [her]. He told [her] to lie down and he acted out his instincts. He was biting [her] and telling [her] that we would not stay even in Belgrade. [She] was crying, but he would not stop doing that for [she] do[es] not remember how long time. [She] kn[e]w that he carried a rif[]le and had a big pistol at his belt. After this incident, he kept coming for the following several nights and raping [her] repeatedly in the same way. . . . At the time [she] was three months pregnant, and as a result of being repeatedly raped by [Kostjerevac, she] had a miscarriage in that d[u]ngeon.

She further stated that “[d]uring one of the nights when [Kostjerevac] was coming to rape [her], he told [her] that he was within the Military Police.”

Other statements and documents from B&H in the Government's exhibit support various aspects of A.O.'s description of the rape(s). For example, documents from B&H state that Kostjerevac was born in September 1961, is a citizen of B&H, and was appointed to the B&H Military Police as of July 25, 1992. In a sworn statement on September 11, 2014, Sabit Sabic, stated he was a member of the B&H military police with Kostjerevac and was familiar with the "basement of the mill" where A.O. was detained, having visited it before the war. He described the basement as "not high and one could not stand up inside" and that it "had a wooden door." In sworn statements on June 9, 2014 and September 11, 2009, A.O.'s husband (1) described the September 1992 attack on the home where they were staying and that he was wounded during the attack, (2) stated that he knew Kostjerevac, who "went to the same school up to the fourth grade of the elementary school in Novo Selo," and, (3) before the war, Kostjerevac "had a short mustache." Ajka Junuzovic said, in a sworn statement on May 24, 2007, that she provided clothing and rags to a woman the military had brought to her house. Sahbaz Sinanovic's wife gave a sworn statement on June 23, 2014, in which she recalled that a captured woman stayed at her home for a few days in the fall of 1992. In a conversation during that stay, the captured woman "told [her] that in Bajrici she was helped by one woman whose name was Ajka and last name, [she thought was] Junuzovic."

The Court concludes that, for purposes of certifying Kostjerevac's extraditability to B&H, A.O.'s statements, and the other materials provided by B&H, constitute sufficient competent evidence establishing probable cause that Adem Kostjerevac, while a member of the Military Police, committed the charged war crime offense based on his conduct toward A.O., a captive civilian, specifically, forcing her to engage in sexual intercourse with him on one or more occasions in her place of captivity in Bajrici during the fall of 1992. See Wiebe, 733 F.2d at 553

(finding the "extradition documents offered into evidence at the extradition hearing were sufficient to support a finding of probable cause" and the magistrate judge "did not err in relying on" those materials because the magistrate judge provided an independent review and did not "merely 'rubber stamp[]' the [foreign government's] indictment" ); United State v. Kollmar, Case No. 19-mj-70677-MAG-1(KAW), 2020 WL 619919, at *3-4, *6-7 (N.D. Cal. Feb. 10, 2020) (finding probable cause for extradition based on the statement of the victim of the charged offenses, including rape, despite challenges based on "contradictions" in the victim's statement and the victim's delay in reporting the incident); In re Extradition of Lagadec, 394 F.Supp.3d at 548 (finding child sexual assault victim's statements provided "probable cause to believe [the person subject to the extradition request] engaged in sexual assault as alleged by French authorities"); In re Extradition of Trinidad, 754 F.Supp.2d at 1082-83 (finding the child victim's statements of details regarding a conversation with the person subject to an extradition request were sufficient to establish probable cause for a charged offense based on the performance of "lewd sexual acts"); In re Extradition of Ritzo, 2010 WL 1542543, at *6 (finding "under the totality of the circumstances" that the victim's uncorroborated statements made while in custody were sufficient to support probable cause as to each of several charges against a person subject to another country's extradition request arising out of sexual assault and "invitation to sexual touching" offenses, among others).

Accordingly, after careful consideration, the Court issues a separate Order of Certification for Extradition of Kostjerevac.

**IT IS SO ORDERED**.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of March, 2020